IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

ELI WAYNE FREELAND,

        Plaintiff,

v.                                    CIVIL ACTION NO.   2:12-cv-08712

DAVID BALLARD, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendants' motion to dismiss.  [ECF No. 16].  For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion.

*I.    BACKGROUND*

Plaintiff's Complaint, which was filed on December 10, 2012, alleges that his right to be free from cruel and unusual punishment under the Eighth Amendment was violated by Defendant prison officials.   Plaintiff alleges that Defendants were deliberately indifferent to serious security breaches, and failed to protect Plaintiff from a substantial risk of serious harm from another inmate who escaped from his segregation cell and attacked Plaintiff with a piece of metal while Plaintiff, who was unattended by staff, was chained to the wall to engage in a telephone call.   Plaintiff seeks monetary damages, as well as declaratory and injunctive relief.

Specifically, Plaintiff alleges that, at approximately 3:15 p.m. on September 27, 2012, while housed on the Quilliams II segregation unit at the Mount Olive Correctional Complex ("MOCC"), Plaintiff was escorted out of his cell by Sergeant Jeff Hilewitz and Corporal Daniel

Hahn in order to make a telephone call. Plaintiff alleges that he was handcuffed, shackled, and then chained to the wall next to the telephone. The officers then left the pod. (ECF 1 at 9, ¶ 11.)

Plaintiff further alleges that, as soon as the officers left the pod, inmate Joe Howard began kicking and beating his cell door, and continued to do so for approximately ten to fifteen minutes. Although the beating caused loud, explosive sounds, no staff responded to investigate. (*Id.* at 9-10, ¶¶ 11-12.) Plaintiff alleges that Howard's door then flew open, and Howard came out of his cell carrying the iron post from his cell stool, which he had somehow unbolted from the floor. (*Id.* at 10, ¶ 12.) Plaintiff alleges that staff had not searched Howard's cell for months. (*Id.* at 10, 14, ¶¶ 12, 34.)

Plaintiff further alleges that, although other inmates who witnessed Howard exit his cell with the post began to kick their doors and scream to get the attention of staff, no one came into the pod. (*Id.*, ¶¶ 13, 15.) Plaintiff was beaten by Howard with the iron post, and alleges that he received injuries including head trauma, hearing loss in his left ear, a separated left shoulder, and injuries to his right arm and both hands. (*Id.*, ¶ 14.)

Plaintiff further alleges that Correctional Officer Michael Bunch was in the Control Tower and had a clear view of this entire incident, as well as notice that inmate Howard's door was unsecure, but he did nothing. (*Id.* at 10-11, ¶¶ 15, 22.) Plaintiff further alleges that Sergeant Jeff Hilewitz, Corporal Brian Fernandez, Officer Elliott (who is not named as a Defendant herein) and Corporal Daniel Hahn stood outside the pod door and watched the entire incident, doing nothing and saying nothing. (*Id.*, ¶ 16.) Ultimately, Howard stopped beating Plaintiff and returned to his cell. (*Id.* at 11, ¶ 17.)

Plaintiff alleges that Defendants failed to reasonably respond to a danger which they knew

2

of and disregarded. (*Id.*, ¶ 20.) Plaintiff further alleges that:

> It was entirely reckless for Defendants to handcuff, shackle then chain me to the wall just to use the telephone then just stand there during the assault. There was no security need to restrain me in such an excessive manner, this is proven by the fact that after I was assaulted, the guards began to allow me out of my cell to walk about the pod.

(*Id.* at 12, ¶ 25.) Plaintiff claims that Defendants' conduct was unreasonable and evinced deliberate indifference. (*Id.*, ¶¶ 23, 26.)

Plaintiff further claims that Defendants had prior specific knowledge that an inmate could beat his door until it came open, because, approximately three months prior, on June 18, 2012, an inmate named Christopher Cox beat his door until it opened, and Cox exited his cell and assaulted a janitor who was cleaning the day room shower. (*Id.* at 12-13, ¶ 28.) Plaintiff also alleges that inmate Cox beat another inmate to death on the recreation yard of the segregation unit. (*Id.*) Significantly, however, Plaintiff's Complaint does not allege that, prior to this incident, he had advised staff of any problems between himself and inmate Howard.

Plaintiff claims that there is a clear pattern of reckless disregard for security on the MOCC segregation units, resulting in damage to cell doors and inmate assaults, and that Defendants have done nothing to prevent it from happening again. (*Id.* at 13, ¶¶ 30, 31.) Plaintiff further alleges that, despite having specific knowledge that prolonged beating on a cell door will result in the door opening, Defendants either have not implemented any procedures requiring a rapid response for investigation of unsecure doors, or failed to follow such policies or procedures on September 27, 2012. (*Id.*, ¶¶ 32, 33.)

Plaintiff further alleges that he filed grievances concerning these issues, but they were denied by Captain Matheny, and those denials were upheld by Warden David Ballard and

3

Commissioner Jim Rubenstein. Plaintiff has attached those grievances to his Complaint. (ECF No. 1, Exs. 1-4.)

Plaintiff's first grievance was filed on September 28, 2012, the day after this incident. The grievance claimed deliberate indifference to his safety and described the incident in a manner similar to the facts alleged in his Complaint. (ECF No. 1 at 15, ¶ 42 and Ex. 1.) Captain Matheny responded to Plaintiff's first grievance by stating "staff cannot be held responsible for cell doors being beat open. Also, the staff can enter the pod only when it is safe to do so. I cannot grant your grievance at this level." (*Id.* at 15, ¶ 43, and Ex. 1.) Captain Matheny's response was affirmed without comment by both Warden Ballard and Commissioner Rubenstein. (*Id.* at 15, ¶ 44 and Ex. 1.)

Plaintiff filed a second grievance concerning this incident on September 30, 2012, alleging that he had been denied recreation on the date of the incident following an argument with a correctional officer, but the correctional officer allowed him to make the phone call that placed him in the dayroom at the time he was attacked by Howard. Plaintiff challenged the conduct of the correctional officers chaining him to the wall and then watching the attack. (*Id.* at 15, ¶ 45 and Ex. 2.) Captain Matheny also responded to the second grievance stating, "Mr. Freeland, you being placed on the phone and another I/M escaping he cell and attacking you has nothing to do with each other." (*Id.*, at 15-16, ¶ 46 and Ex. 2.) The denial of this grievance was also affirmed on appeal without comment by Warden Ballard and Commissioner Rubenstein. (*Id.* at 16, ¶ 47 and Ex. 2.)

On October 4, 2012, Plaintiff filed a third grievance concerning the staff's alleged deliberate indifference to Plaintiff's safety by allowing inmate Howard to beat his door for ten to

4

fifteen minutes without response, and failing to take any action when Howard's door became unsecure.  (*Id.* at 16, ¶ 48 and Ex. 3.)   Captain Matheny responded to this grievance by stating, "It has not been confirmed that he beat his door for 10-15 minutes.   Also staff could have been busy dealing with someone else beating their door or some other type of emergency."   (*Id.* at 16, ¶ 49 and Ex. 3.)   As noted by Plaintiff, the denial of this grievance was also upheld on appeal without comment by Warden Ballard and Commissioner Rubenstein.   (*Id.* at 16, ¶ 50 and Ex. 3.)

Plaintiff further alleges that he has been denied appropriate medical treatment following this incident.   However, Plaintiff has not specifically named any medical providers as Defendants herein.   On October 5, 2012, Plaintiff filed a fourth grievance concerning his medical treatment following the September 27, 2012 incident.   Plaintiff claimed that, although he was examined by Dr. Phillip Shoaf, he did nothing and said Plaintiff was fine.  (*Id.* at 16-17, ¶ 51 and Ex. 4.) Plaintiff alleges that he has suffered hearing loss in his left ear, and that "Dr. Shoaf was deliberately indifferent to Plaintiff's health."   (*Id.*)   As the unit manager, Captain Matheny signed off on this grievance, but he had Anna Kincaid, R.N., provide a written response.   The response states, "10/9/12 – The physician will be seeing you for follow-up in a few weeks.   At this time, his evaluation determined that you do not need a referral to a specialist at this time."   (*Id.* at 17, ¶ 52 and Ex. 4.)   Warden Ballard and Commissioner Rubenstein upheld this grievance without comment as well.   (*Id.* at 17, ¶ 53 and Ex. 4.)

With his Complaint, Plaintiff also filed the affidavits of nine other inmates who were in Pod 5 of the Quilliams 2 unit at the time of inmate Howard's assault of Plaintiff.   (*Id.*, Exs. 5-13.) The Affidavit of Charles Lively indicates that, while Lively was working as a janitor in the pod, he noticed that the seat on the stool in inmate Howard's cell had been removed and was replaced with

5

what appeared to be a folded up blanket. (ECF No. 1 at 14, ¶ 35 and Ex. 5.) Lively further indicates that only one bolt still held the stool to the floor, and that the stool had been in that condition for some time. (*Id.*) Lively further states that he told Howard that he would report the condition of the stool to the staff so that maintenance could fix it, but Howard told him that they already knew about it. (*Id.*) The other eight affidavits provide statements from other inmates in the pod who witnessed Howard beating his door, the attack on Plaintiff, and the conduct of Defendants during that time. (*Id.*, Exs. 6-13.)

On April 18, 2013, subsequent to the filing of Defendants' motion to dismiss, Plaintiff filed a motion for leave to supplement or amend his Complaint. (ECF No. 22.) On July 24, 2013, Plaintiff was granted leave to amend his Complaint to add six new paragraphs, which along with the original Complaint, will be collectively referred to as Plaintiff's "Amended Complaint."

The amendments to the Complaint allege that Plaintiff had a verbal confrontation with Corporal Brian Fernandez approximately thirty minutes prior to Howard's attack on Plaintiff. Plaintiff alleges that the confrontation resulted in the denial of Plaintiff's usual one-hour recreation period. Fernandez, however, allowed Plaintiff the opportunity to use the telephone, which resulted in the attack. (ECF No. 22 at 3, ¶ 1.) Plaintiff's amendments further allege that Plaintiff had previously had numerous conflicts with Sergeant Jeff Hilewitz, including at least two occasions where Hilewitz pepper sprayed Plaintiff, and, in one of those instances, Hilewitz accidentally ingested a large amount of pepper spray. (*Id.*, ¶ 2.) Plaintiff contends that his prior confrontations with these officers "provided motivation for their disregarding Plaintiff's need for emergency assistance while being attacked by inmate Howard." (*Id.*, ¶ 5.)

Plaintiff's amendments to his Complaint also discuss more details of the prior incident in

6

which inmate Christopher Cox kicked his door open and attacked another prisoner with a "homemade weapon broom/shank." Plaintiff alleges that, in that incident, correctional officers immediately entered the pod and subdued Cox. (*Id.*, ¶ 3.) Plaintiff further alleges that there were other similar prior incidents in which staff immediately investigated the source of the banging from inmates beating and kicking their doors and remedied those situations. (*Id.*, ¶ 4.) Thus, Plaintiff asserts that Defendants should have similarly responded to assist Plaintiff on September 27, 2012.

Defendants filed the pending motion to dismiss and a memorandum in support thereof (ECF No. 16, 17.) Defendants' motion asserts that Plaintiff's Complaint documents fail to state a claim upon which relief can be granted, and should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff filed a memorandum in opposition to the motion to dismiss. (ECF 21.)

## II. LEGAL STANDARDS

In *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to Plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555.

The Supreme Court elaborated on its holding in *Twombly* in *Ashcroft v. Iqbal*, 556 U.S.662

(2009), a civil rights case. The Court wrote:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted.) Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556.
>
> * * *
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

556 U.S. at 678–79.

Defendants' motion will be reviewed under Rule 12(b)(6) of the Federal Rules of Civil Procedure and the *Twombly/Iqbal* standard.

### III. DISCUSSION

*A. Plaintiff's Eighth Amendment Claims.*

Defendants argue that Plaintiff cannot successfully assert that Defendants knew or had reason to know that Plaintiff was in any danger of being attacked by inmate Howard and, thus, cannot state a plausible claim of deliberate indifference to a substantial risk of harm to Plaintiff under the Eighth Amendment.

In *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), the Supreme Court held that the Eighth Amendment to the Constitution "imposes duties on [prison] officials who must provide humane

8

conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" The duty to guarantee an inmate's safety includes "a duty to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 828.

To sustain an Eighth Amendment claim, a prisoner must show two things: (1) "the deprivation must be, objectively, 'sufficiently serious;'" that is, "denial of 'the minimal civilized measure of life's necessities;'" and (2) the prison official had a "'sufficiently culpable state of mind;'" that is, "'deliberate indifference' to inmate health or safety." *Id*. at 834. (Citations omitted.) The Supreme Court rejected an argument that an objective test of deliberate indifference be established.

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

While deliberate indifference on the part of prison officials to a specific known risk of harm states a claim under the Eighth Amendment to the United States Constitution, *see Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987), prison officials cannot be held liable under the Eighth Amendment unless they knew of and disregarded an excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 847. The negligent failure to protect inmates from violence will not suffice. *Pressly*, 816 F.2d at 979.

Defendants assert that Plaintiff has not demonstrated that any of the named Defendants

9

acted with deliberate indifference to his safety. They argue:

> In the instant action, Plaintiff has failed to allege or articulate any facts that the WVDOC Defendants were aware of or should have been aware [sic; of facts] from which an inference could be drawn that Plaintiff was at substantial risk of serious harm as a result of Inmate Howard escaping from his cell, in the segregation unit of a maximum security prison, and attacking Plaintiff. Additionally, Plaintiff has failed to articulate any facts that indicate that the WVDOC Defendants actually drew such an inference from any facts.
>
> * * *
>
> Because Plaintiff has failed to allege or demonstrate that the WVDOC Defendants knew, or should have known, of any substantial risk of harm to Plaintiff, it is proper for this Court to enter an Order dismissing Plaintiff's Complaint. More specifically, Plaintiff has failed to allege any set of facts that would, or should, have led the WVDOC Defendants to believe that Inmate Howard would defeat his cell door, escape from his cell and attack Plaintiff.

(ECF No. 17 at 4.)

Defendants further contend that:

> In the instant case, after going through the strip out process, Plaintiff was taken to a phone located in the walkabout or dayroom of Pod 5 to make a telephone call. Once he reached the area of the phone, the officers handcuffed one of Plaintiff's arms to a fixed bar next to the phone to keep Plaintiff in the area of the phone while out of his cell. No other inmates were removed from their cells while Plaintiff was making his telephone call and while Plaintiff was out of his cell.
>
> While Plaintiff was making his telephone call, Inmate Joseph Howard escaped from his cell and assaulted Plaintiff. More particularly, Inmate Howard destroyed a stool that was affixed to the floor of his cell, using the flat seating surface to wedge between the door jamb and the slider. Once the seating surface was wedged into the gap, Inmate Howard kicked the plate until it created sufficient force to shear off screws holding the lock mechanism on the slider. When the door slid open, Inmate Howard escaped from his cell, proceeded to the dayroom/walkabout area and assaulted Plaintiff with the support pillar of the stool he destroyed.
>
> Inmate Howard was charged and convicted of an institutional rule violation of escape along with other violations.

(*Id.* at 2.)

10

On April 18, 2013, Plaintiff filed a memorandum in opposition to Defendants' motion to dismiss.  (ECF No. 21.)   There, Plaintiff emphasizes the fact that none of the correctional officers came to the pod "to investigate the loud banging" and, throughout the entire incident, Defendants stood outside the pod watching and doing nothing.  (ECF No. 21 at 6.)   Plaintiff asserts that Defendants "made no attempt to aid Plaintiff or intervene on his behalf in any way, as inmate Howard pummeled Plaintiff with an iron post to the point that he was begging for his life."  (*Id.* at 7.)

Plaintiff argues that Defendants could have used a stun grenade, mace/pepper spray, or rubber bullets to incapacitate Howard without entering the pod.  (*Id.* at 7 n.4.)   He alleged this in his Complaint as well, stating:

> Defendants just watched me being repeatedly hit with [the] steel post.  They did not yell, "stop!" or anything.  They all carry pepper spray canisters, they could have pepper sprayed Howard at any time.  They have other weapons they could have used.  They had 10-15 minutes to prepare to respond to the beating on the door.  They did nothing.

(ECF No. 1 at 12, ¶ 24.)

Plaintiff further contends that this incident was allowed to occur due to various other security lapses, such as the failure to routinely inspect segregation cells.  (ECF No. 17 at 8.) Furthermore, based upon a prior incident on the same pod, Plaintiff further alleges that Defendants "had prior 'specific knowledge' that repetitive and 'prolonged beating on a cell door will result in the door coming open and the resident inmate exiting his cell.'"   (*Id.* at 8.)

Plaintiff loosely quotes *Farmer v. Brennan*, the seminal case on a prison official's duties under the Eighth Amendment, as follows:

> "Prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners.  Having incarcerated persons with demonstrated proclivities for

11

antisocial criminal, and often violent conduct, having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature takes its course. Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective any more than its squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society."

511 U.S. at 833 [internal citations omitted and other alterations from original made by Plaintiff]. (ECF No. 21 at 10.) Plaintiff asserts that he has clearly alleged facts sufficient to support a failure to protect claim and that he has "detailed a pattern of reckless behavior committed by Defendants" which is sufficient to survive a motion to dismiss. (*Id.*) Defendants did not file a Reply memorandum.

### 1. *Defendants Hilewitz, Fernandez, Hahn, and Bunch*

Defendants rely heavily on the fact that Plaintiff has not alleged that they had any specific knowledge that inmate Howard posed a threat to Plaintiff. Plaintiff has alleged, however, that there were prior incidents of inmates beating on their doors until they opened and that at least one inmate previously escaped from his cell and attacked another inmate, which Plaintiff asserts gave Defendants "prior specific knowledge" that an incident like that was likely if staff did not respond to the indicator that a door was unsecure.

In *Farmer*, the Supreme Court held:

Nor may a prison official escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault. The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial "risk of serious damage to his future health." [*Helling v. McKinney*, 509 U.S. 25, 35 (1993)], and it does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to

12

him or because all prisoners in his situation face such risk.

511 U.S. at 843. Nevertheless, "[o]rdinarily, [Plaintiff] cannot satisfy his burden of proof [of showing deliberate indifference] by pointing to a single incident or isolated incidents . . . ." *Shaw v. Stroud*, 13 F.3d 799 (4th Cir. 1994) (quoting *Slakan v. Porter*, 737 F.2d 368, 372-73 (4th Cir. 1984).

Plaintiff's assertion that there was at least one prior incident where an inmate repeatedly beat on his door until it became unsecure and permitted the inmate to escape and assault another prisoner is not sufficient to permit the Court to draw a reasonable inference that Defendants are liable for the fact that Plaintiff was attacked by Howard. Those allegations, even taken as true, do not give rise to a facially plausible claim that Defendants had actual knowledge of a substantial risk of harm to Plaintiff and disregarded that risk.

Defendants' motion documents, however, do not address Plaintiff's allegations that the correctional officers who were present on the unit failed to intervene once Howard attacked Plaintiff, at which time there was an obvious threat to Plaintiff's safety. To establish a claim for failure to protect him from violence, an inmate must show: (1) "serious or significant physical or emotional injury;" and (2) that the prison officials had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003).

In *Odom v. South Carolina Dep't of Corrections*, the United States Court of Appeals for the Fourth Circuit observed that:

> In June 2000, it was clearly established in this circuit that correctional officers who are present when a violent altercation involving an armed inmate erupts and fail to intervene immediately do not violate the Eighth Amendment if officers are unarmed, unaware of a risk of harm prior to the altercation, and take reasonable steps to intervene safely. *See* [*Winfield v. Bass*, 106 F.3d 525, 531-32 (4th Cir. 1997)]. By the same token, we had also determined well before the time of this attack, that a correctional officer who stands by as a passive observer and *takes no action whatsoever* to intervene during an assault violates the rights of the victim

13

> inmate. *See Gordon v. Leake*, 574 F.2d 1147, 1152 (4th Cir. 1978). *Gordon* does not suggest whether the officers knew about the potential violence before the attack or whether they were merely present when the fight broke out; nevertheless, Plaintiff stated a viable claim as a result of the officer's failure to take any action whatsoever.

349 F.3d 765, 773 (4th Cir. 2003).

Plaintiff has alleged that Defendants had actual knowledge of a substantial risk of harm to Plaintiff, and failed to act to protect him. Specifically, Plaintiff alleges that Defendants Hilewitz, Fernandez, Hahn and Bunch did nothing to intervene to stop the brutal attack on Plaintiff when they had the opportunity to do so. Plaintiff further alleges that all of Defendants were aware of prior incidents of inmates beating their doors open and attacking other inmates. Taking Plaintiff's allegations as true, Plaintiff's Complaint states enough facts to state a claim for relief that is plausible on its face concerning the failure of Defendants Hilewitz, Fernandez, Hahn and Bunch to intervene in the attack of Plaintiff by inmate Howard on September 27, 2012, and that dismissal of that claim is not presently warranted.

### 2. *Defendants Matheny and Ballard*

The claims against Defendants Matheny and Ballard, however, must be separately addressed. Plaintiff has not alleged that Matheny or Ballard were present at the time of, or in any way directly involved in, this incident. Rather, he simply alleges that Matheny, as the Segregation Commander, "is responsible for the day to day operation of the segregation units and supervises the guards assigned to those units." (ECF No. 1 at 8.) Concerning Defendant Ballard, Plaintiff states that, as the Warden, "he is legally responsible for the day to day operations of MOCC and for the welfare of all the prisoners in MOCC." (*Id.*)

Thus, Plaintiff's claims against Matheny and Ballard appear to be claims of supervisory

liability premised on their failure to correct the alleged unconstitutional conduct of their subordinates. As noted in *Evans v. Chalmers*, 703 F.3d 636, 660–61 (4th Cir. 2013):

> [T]he Supreme Court explained in *Iqbal* that "a supervisor's mere knowledge" that his subordinates are engaged in unconstitutional conduct is insufficient to give rise to liability; instead a supervisor can only be held liable for "his or her own misconduct." [556 U.S. at 677.]

At bottom, the only specific allegations made by Plaintiff concerning the conduct of Defendants Matheny and Ballard are that they denied his administrative grievances filed after this incident. (ECF No. 1 at 15-16, ¶¶ 42-50.)

Although the Fourth Circuit has not directly addressed the issue, courts in other federal circuits have held that liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See, e.g., Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Harris v. Stoddard*, 2013 WL 4829922 *6 (W.D. Mich., Sept. 10, 2013) (slip copy); *Hopkins v. Bondiskey*, 2013 WL 1144930 *14-*15 (D.N.J., Mar. 18, 2013) (unpublished).

Thus, Plaintiff's allegations against Defendants Matheny and Ballard do not state a facially plausible claim of supervisory liability, and that Plaintiff's Complaint fails to state a claim upon which relief can be granted against Defendants Matheny and Ballard.

  B. *Plaintiff's Claims against Defendants in Their Official Capacities.*

Although not addressed in Defendants' motion, Plaintiff's claims against Defendants must be dismissed to the extent that he is seeking monetary damages against them in their official capacities because they are immune from such liability under the Eleventh Amendment. In *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989), the Supreme Court stated:

> Obviously, state officials literally are persons. But a suit against a state official in

> his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself. We see no reason to adopt a different rule in the present context, particularly when such a rule would allow petitioner to circumvent congressional intent by a mere pleading device.
>
> We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983. The judgment of the Michigan Supreme Court is affirmed. [Citations omitted].

Pursuant to the Eleventh Amendment to the United States Constitution, the power of the federal judiciary does not extend to suits by a citizen of one state against another, or to suits by a citizen against his or her own state. *Hans v. Louisiana*, 134 U.S. 1, 9 (1980). The Eleventh Amendment of the United States Constitution bars a suit in a federal court by private parties seeking to impose a liability upon a State or State officials, which may be paid from public funds in the state treasury. *Quern v. Jordan*, 440 U.S. 332, 337 (1979). Absent consent, federal suits against a state by a citizen of that state or another state are prohibited by the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 199 (1985); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984).

Pursuant to the Eleventh Amendment, a federal court may enjoin state officials to conform their future conduct to federal law, which is distinguishable from a retroactive monetary award paid from State funds. *Id.* at 337. Moreover, a State is not a "person" for purposes of section 1983 litigation. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66 (1989); *Kentucky v. Graham*, 473 U.S. 159 (1985).

Thus, although Plaintiff may seek injunctive relief from Defendants in their official capacities, it is clear that Defendants are immune from liability for monetary damages in that capacity under the Eleventh Amendment. Consequently, these claims must also be dismissed.

16

## IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss. The Court **GRANTS** Defendants' motion to the extent that Defendants have been sued for monetary damages in their official capacities and concerning Plaintiff's supervisory liability claims against Defendants Matheny and Ballard, but otherwise **DENIES** the motion to dismiss.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: March 13, 2014

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE