## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## CHARLESTON

**ELI W. FREELAND,**

       **Plaintiff,**

**v.**                             **Case No. 2:12-cv-08712**

**DAVID BALLARD, et al.**

       **Defendants.**

### PROPOSED FINDINGS AND RECOMMENDATION

This matter is assigned to the Honorable Thomas E. Johnston, United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).  Pending before the court are the plaintiff's Motion for Summary Judgment and/or Default Judgment (ECF No. 53) and two Motions for Preliminary Injunction and/or Temporary Restraining Order (ECF Nos. 49 and 91).  For the reasons stated herein, it is respectfully **RECOMMENDED** that all of these motions be **DENIED**.

### RELEVANT PROCEDURAL HISTORY

On December 10, 2012, the plaintiff filed a Complaint (ECF No. 2) alleging that defendants David Ballard, Russell Matheny, Jeff Hilewitz, Brian Fernandez, Daniel Hahn, and Michael Bunch were deliberately indifferent to serious security breaches, and failed to protect the plaintiff from a substantial risk of serious harm from another inmate who escaped from his segregation cell and attacked the plaintiff with a piece of

metal while the plaintiff, who was unattended by staff, was chained to the wall to engage in a telephone call.  Specifically, the plaintiff alleges that, at approximately 3:15 p.m. on September 27, 2012, while housed on the Quilliams II segregation unit at the Mount Olive Correctional Complex ("MOCC"), the plaintiff was escorted out of his cell by Sgt. Jeff Hilewitz and Cpl. Daniel Hahn in order to make a telephone call.  The plaintiff alleges that he was handcuffed, shackled, and then chained to the wall next to the telephone.  The officers then left the pod.  (ECF No. 1 at 9, ¶ 11).

The plaintiff further alleges that, as soon as the officers left the pod, inmate Joe Howard began kicking and beating his cell door, and continued to do so for approximately 10-15 minutes.  Although the beating caused loud, explosive sounds, no staff responded to investigate.  (*Id.* at 9-10, ¶¶ 11-12).  The plaintiff alleges that Howard's door then flew open and Howard came out of his cell carrying the iron post from his cell stool, which he had somehow unbolted from the floor.  (*Id.* at 10, ¶ 12).  The plaintiff alleges that staff had not searched Howard's cell for months.  (*Id.* at 10, 14, ¶¶ 12, 34).

The plaintiff further alleges that, although other inmates who witnessed Howard exit his cell with the post began to kick their doors and scream to get the attention of staff, no one came into the pod.  (*Id.*, ¶¶ 13, 15).  The plaintiff was beaten by Howard with the iron post, and alleges that he received injuries including head trauma, hearing loss in his left ear, a separated left shoulder and injuries to his right arm and both hands.  (*Id.*, ¶ 14).

The plaintiff further alleges that Correctional Officer Michael Bunch was in the Control Tower and had a clear view of this entire incident, as well as notice that inmate Howard's door was unsecure, but he did nothing.  (*Id.* at 10-11, ¶¶ 15, 22).  The plaintiff further alleges that Sgt. Jeff Hilewitz, Cpl. Brian Fernandez, Officer Elliott (who is not

named as a defendant herein) and Cpl. Daniel Hahn stood outside the pod door and watched the entire incident, doing nothing and saying nothing. (*Id.*, ¶ 16). Ultimately, Howard stopped beating the plaintiff and returned to his cell. (*Id.* at 11, ¶ 17). The plaintiff is seeking monetary damages, as well as declaratory and injunctive relief.

The defendants were served with process and their Answers or other responses were due between April 9, 2013 and April 15, 2013. (ECF Nos. 10-15). On April 9, 2013, the defendants, by counsel, filed a Motion to Dismiss (ECF No. 16) and Memorandum in support thereof (ECF No. 17).

On July 24, 2013, following a status conference, the undersigned granted leave to the plaintiff to amend his Complaint to incorporate six paragraphs alleged in the plaintiff's Motion to Amend  (ECF No. 22) into the original Complaint, rather than requiring the plaintiff to file a new Amended Complaint.  The July 24, 2013 Order stated that the court would collectively refer to document numbers 1 and 22 as "the plaintiff's Amended Complaint" and that, in light of this amendment, the defendants would have until August 7, 2013 to "supplement their Motion to Dismiss or otherwise respond to the plaintiff's Amended Complaint."  (ECF No. 36 at 3-4).

The defendants did not supplement their Motion to Dismiss or otherwise respond to the plaintiff's Amended Complaint by August 7, 2013.  On February 28, 2014, while the defendants' Motion to Dismiss was still pending, the plaintiff filed his Motion for Summary Judgment and/or Default Judgment (ECF No. 53) asserting that the defendants were in default because they had neither supplemented their Motion to Dismiss nor otherwise responded to the Amended Complaint by August 7, 2013.  Then, on March 4, 2014, the defendants filed an Answer to Amended Complaint (ECF No. 54)

and a Response in Opposition to the plaintiff's Motion for Summary Judgment and/or

Default Judgment (ECF No. 55).  The defendants' Response asserts in pertinent part:

> On April 18, 2013, Plaintiff filed his motion to supplement and amend his Complaint (Doc. # 22).  The Plaintiff's motion merely included additional factual information to be included in his original Complaint.   The allegations contained in the Plaintiff's Motion to Amend (Doc. # 22) do not contain any new grounds to defeat the Defendants' originally filed Motion to Dismiss on April 9, 2013 (Docs. # 16 and 17).  Furthermore, no actual Amended Complaint was filed upon which these Defendants could respond on the Court's CM/ECF system.  As such, the Defendants felt there was no need to supplement its original documents.
>
> The Plaintiff's original Complaint was referred to as the Amended Complaint.  Defendants had no additional information to add to their Motion to Dismiss.  These Defendants believe that the originally filed Motion to Dismiss was sufficient on the grounds stated therein.  However, out of an abundance of caution, the Defendants filed a Notice (Doc. # 54) regarding the same on March 4, 2014 stating that it was merely reincorporating its originally filed Motion to Dismiss and denying all allegations.

(ECF No. 55 at 2).

On March 13, 2014, Judge Johnston entered a Memorandum Opinion and Order

(ECF No. 57) denying the defendants' Motion to Dismiss concerning the plaintiff's

failure to protect claim, but otherwise granting the Motion to Dismiss.  Accordingly, the

only remaining claim presently before this court is the plaintiff's claim that defendants

Hilewitz, Fernandez, Hahn and Bunch failed to intervene to protect the plaintiff after

the assault by inmate Joseph Howard had begun.  Judge Johnston referred this matter

to the undersigned for additional proceedings concerning the remaining claim.

The plaintiff has also filed two motions for preliminary injunctive relief which

will be addressed herein.  On January 30, 2014, the plaintiff filed a "Motion for

Preliminary Injunction and/or Protective Order" (ECF No. 49).  The second motion is a

"Motion for a Temporary Restraining Order and Preliminary Injunction" (ECF No. 91), which was filed on July 18, 2014.

## ANALYSIS

### A.     The plaintiff's Motion for Summary or Default Judgment.

The plaintiff's Motion for Summary Judgment/or Default Judgment (ECF No. 53), filed on February 28, 2014, contends that, on August 7, 2013, the defendants had not filed an Answer or otherwise responded to the plaintiff's Amended Complaint, as ordered by the undersigned on July 24, 2013.   Thus, the plaintiff contends that the defendants failed to comply with the court's July 24, 2013 Order, allegedly placing thm in default.  The plaintiff's motion is unfounded.

"Rule 55 of the Federal Rules of Civil Procedure authorizes the entry of a default judgment when a defendant fails 'to plead or otherwise defend' in accordance with the Rules."  *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982).  Where a defaulting party has taken "reasonably prompt" action to cure the default and has asserted a meritorious defense, default judgments are not favored.

On July 24, 2013, when the undersigned granted the plaintiff's Motion to Supplement and Amend Complaint (ECF No. 22) and stated that the court would collectively treat document numbers 1 and 22 as the plaintiff's "Amended Complaint," the court ordered that the defendants had until August 7, 2013 to supplement their Motion to Dismiss or otherwise respond to the Amended Complaint.  The defendants chose not to supplement their Motion to Dismiss, instead relying upon the arguments made in the original motion.  The undersigned proposes that the presiding District Judge **FIND** that this action did not place the defendants in default.  The undersigned

further proposes that the presiding District Judge **FIND** that the plaintiff has suffered no prejudice or delay resulting from the defendants' conduct.

Under these circumstances, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Motion for Default Judgment is not warranted. Thus, it is respectfully **RECOMMENDED** that the Motion for Default Judgment (ECF No. 53) be **DENIED**.

### B.    The plaintiff's Motions for Preliminary Injunctive Relief.

Also pending are two motions for preliminary injunctive relief filed by the plaintiff. The first motion, a "Motion for Preliminary Injunction and/or Protective Order" (ECF No. 49) was filed on January 30, 2014.[1] The second motion is a "Motion for a Temporary Restraining Order and Preliminary Injunction" (ECF No. 91), filed on July 18, 2014.

Rule 65(b) of the Federal Rules of Civil Procedure permits the issuance of a Temporary Restraining Order, without notice to the adverse party, only if "specific facts in an affidavit or a verified complaint clearly show that the immediate and irreparable injury, loss or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b). Rule 65(a) provides that a court may issue a preliminary injunction only on notice to the adverse party. Fed. R. Civ. P. 65(a). The remainder of the rule addresses the procedure for a hearing on motions for a preliminary injunction and the scope of any such injunction. *Id.*

---

[1]  On March 24, 2014, the presiding District Judge received a letter from the plaintiff detailing additional allegations of "threats, torture, destruction of [the plaintiff's] property and paperwork, assaults and deliberate indifference" that the plaintiff claims are acts of retaliation for the filing of the instant civil action. This letter has not yet been docketed, but will be attached as an exhibit hereto. (*See* Court Ex. A).

In 2009, the United States Court of Appeals for the Fourth Circuit revisited the applicable standard of review for preliminary injunctions in the case of *The Real Truth About Obama*, 575 F.3d 342 (4th Cir. 2009) (hereinafter "*Real Truth*")[2], in light of the Supreme Court's decision in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 129 S. Ct. 365, 172 L. Ed.2d 249 (2008).  As noted by the *Real Truth* Court:

> A preliminary injunction is an extraordinary remedy afforded prior to trial at the discretion of the district court that grants relief *pendente lite* of the type available after the trial.  *See In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 524-26 (4th Cir. 2003); *see also De Beers Consol. Mines, Ltd. V. United States*, 325 U.S. 212, 220-21, 65 S. Ct. 1130, 80 L. Ed. 1566 (1945).  Because a preliminary injunction affords, on a temporary basis, the relief that can be granted permanently after trial, the party seeking the preliminary injunction must demonstrate by "a clear showing" that, among other things, it is likely to succeed on the merits at trial.  *Winter*, 129 S. Ct. at 376; *see also Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S. Ct. 1865, 138 L. Ed.2d 162 (1997)(per curiam). * * *

> In its recent opinion in *Winter*, the Supreme Court articulated clearly what must be shown to obtain a preliminary injunction, stating that the plaintiff must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  *Winter*, 129 S. Ct. at 374.  And all four requirements must be satisfied.  *Id.*  Indeed, the Court in *Winter* rejected a standard that allowed the plaintiff to demonstrate only a "possibility" of irreparable harm because that standard was "inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Id.* at 375-76.

575 F.3d 345-46.

The *Real Truth* decision emphasizes that "the *Winter* requirement that the plaintiff clearly demonstrate that [he] will likely succeed on the merits is far stricter than the [*Blackwelder Furniture Co. of Statesville v. Seilig Manufacturing Co.*, 550 F.2d 189

---

[2]   Although the original decision in *Real Truth* was vacated by the Supreme Court for further consideration in light of the decision in *Citizens United v. Federal Election Commission*, 558 U.S. 310 (2010), the Fourth Circuit reissued its opinion on Parts I and II of its earlier opinion in the case.  *See* 575 F.3d at 345-347.

(4th Cir. 1977)] requirement that the plaintiff demonstrate only a grave or serious *question* for litigation." *Id.* at 346-47. The *Real Truth* further distinguishes the *Winter* standard from the old *Blackwelder* standard because it no longer requires the court to balance the irreparable harm to the respective parties, but rather requires the plaintiff to make a clear showing that he is likely to be irreparably harmed, and that the court must pay particular attention to the public consequences in employing the extraordinary remedy of an injunction. The Court again emphasized that <u>all four</u> factors must be met in order to justify this extraordinary relief. *Id.* at 347. Thus, the Court stated that the standard articulated in *Winter* would henceforth govern the issuance of preliminary injunctions in the all federal courts. *Id.*

Both of the plaintiff's motions for preliminary injunctive relief allege that the plaintiff has been denied medications for Hepatitis C and various mental health issues, and that the plaintiff has been subjected to excessive use of force, harassment and retaliation by prison staff, claims which are wholly unrelated to the remaining "failure to intervene" claim pending against defendants Jeff Hilewitz, Brian Fernandez, Daniel Hahn and Michael Bunch, and are directed at prison staff or contracted service providers who are not defendants in the instant matter.[3]

Specifically, the plaintiff's motions allege that, after being prescribed peginterferon treatment for Hepatitis C by outside doctors, he is being denied such treatment by Wexford Health Sources, Inc. ("Wexford"), the contracted medical

---

[3]  Under the current procedural posture of this case, the court cannot consider these allegations as part of the plaintiff's claims for relief as alleged in his Complaint, as they do not arise out of the same conduct, transaction or occurrence and involve potential defendants who are not presently part of this case.  If the plaintiff wishes to have such allegations considered by this court, the plaintiff must either move for leave to amend his Complaint, and provide a proposed Amended Complaint for the court's consideration, or the plaintiff may file a new civil action addressing these issues, after exhausting all available administrative remedies.  *See* 42 U.S.C. § 1997e(a).

provider at MOCC.  The plaintiff further alleges that other similarly situated inmates are receiving peginterferon treatment for Hepatitis C.  Thus, the plaintiff alleges that Wexford has been deliberately indifferent to his serious medical need in violation of the Eighth Amendment, and has denied the plaintiff's right to equal protection under the law, in violation of the Fourteenth Amendment.

The plaintiff further alleges that he has been denied Klonopin, which he alleges was prescribed for him by outside doctors to treat an anxiety disorder and for suicide prevention.  The plaintiff contends that other similarly situated inmates are receiving Klonopin.  The plaintiff again alleges that Wexford[4] has been deliberately indifferent to his serious medical needs and denied him equal protection, because they have refused to provide the plaintiff with this medication.

Both of the plaintiff's motions also allege that the plaintiff has, on several occasions, experienced panic attack symptoms and suicidal ideations, and has even attempted to cut himself with broken glass in his segregation cell.  The plaintiff further alleges that, instead of rendering assistance to the plaintiff, by enabling him to see a mental health professional, prison staff have threatened the plaintiff with use of force, and actually have, on more than one occasion, used force against the plaintiff, such as chemical agents and use of a mechanical restraint chairs and 4-point restraints.  The plaintiff also states that he has been disciplined for his suicide attempts and is "being wrote [sic; written] up over and over."  The plaintiff contends that certain prison staff members, including the named defendants, are retaliating against, harassing, and

---

[4]   The undersigned notes that, although Wexford is the contracted medical provider at MOCC, a separate company, known as "PSIMED Inc." d/b/a "PSIMED Corrections LLC" is the contracted provider for mental health services at MOCC.  The plaintiff's motions do not clarify which entity is responsible for prescribing medications or treatment for the plaintiff's mental health issues.

"torturing" the plaintiff, including keeping him in the cell with the broken window in freezing temperatures for 35 days.

The plaintiff's first motion addresses the four factors the plaintiff must demonstrate in order to be granted a preliminary injunction. The plaintiff's first motion asserts that he will suffer irreparable harm if an injunction is not issued granting the following equitable relief:

1.  Restraining Capt. Ronnie Williams, Capt. Russell Matheny, Lt. Daniel Hahn, Lt. Brian Fernandez, Sgt. Jeff Hilewitz, Capt. Jonathan Ward, CO II Jerry Walton, Psy-Med [sic; PSIMED] employee Shanna   Coleman and CO II Richard Williams from having any interaction with the plaintiff for the duration of this case;

2.  Enjoining all of the above-named individuals from any acts of further harassment or retaliation against the plaintiff; and

3.  Compelling the West Virginia Division of Corrections and Wexford Health Sources, Inc. (and its mental health division) to provide necessary medications (specifically peginterferon injections, Klonopin, and Advair, to treat COPD).

(ECF No. 49 at 14-15).

The plaintiff's first motion further asserts:

The plaintiff has shown by the nature of the events and by serious medical and mental health issues that he is suffering and will suffer irreparable injury or harm if the injunction is not granted. The defendants and named parties will suffer little, if any, harm if this court grants the requested "Restraining Order and Injunctions."

(*Id.* at 15-16). The plaintiff further asserts that the issuance of this preliminary injunctive relief would not be contrary to the public interest. The plaintiff cites certain authority holding that exposure to extremely cold temperatures can state an Eighth Amendment claim, and holding that mental health care is an integral part of medical

treatment and can give rise to claims of deliberate indifference to serious medical needs. (*Id.* at 16-17).

The plaintiff's Memorandum of Law in support of his second motion for preliminary injunctive relief largely repeats his assertions that he is being denied medication for his panic attacks and suicidal thoughts, and alleges that the failure to provide his with this medication "has cause[d] him to be assaulted with chemical agents and caused him to endure long hours of extreme bondage in the form of extreme restraints such as 'full restraint chairs' and '4-point restraints.'"  (ECF No. 92 at 2-3).

The plaintiff also alleges that Warden David Ballard has made an open declaration of "Martial Law" against inmates such as the plaintiff and has put the plaintiff's health and safety in jeopardy.  The plaintiff further states that "denial of proper medical treatment is exactly why the routine excessive force and assaults continue to be the only method used against me in my time of need."  (*Id.* at 8-9).

The plaintiff's Memorandum of Law in support of his second motion also addresses the rigorous four-factor test for granting preliminary injunctive relief in relation to his case.  The plaintiff contends that, contrary to another doctor's instructions, he has been denied care for a serious medical need.  The plaintiff contends that this is a clear violation of his Eighth Amendment rights.  The plaintiff further contends that he has been unnecessarily sprayed with chemical agents and "tricked" into believing that prison staff was coming to help him when they "sprayed his open wounds."  (*Id.* at 10).  The plaintiff's Memorandum of Law further states:

> These things along with the Warden at MOCC ordering the directive to implement martial law on the isolation units mixes to make a very dangerous and harmful situation for plaintiff to live in.   MOCC administration has instructed officers on the isolation units that they "<u>do not</u>" have to make "<u>efforts to temper</u>" the severity of the force used against

> inmates, <u>in direct violation of the Eighth Amendment and United States
> Supreme Court case law.  The e-mail setting forth this "protocol" that "no
> efforts to temper" are required on the isolation, or "seg" units</u> was written
> by Major Robert Rhodes and <u>carbon copied to Respondent Ballard,
> establishing his knowledge and approval of this unconstitutional directive</u>.

(*Id.* at 11) [Emphasis in original].

The plaintiff further contends that his life is in danger and, "[i]f these men have

no problem telling a whole prison staff to knowingly violate and torture inmates who are

locked alone in there [sic; their] cells, who knows what they will do next or how long it

will be until they make good on there [sic; their] threats to kill me." (*Id.* at 11).  The

plaintiff also contends that the "extreme use" of restraint chairs and 4-point restraints is

causing him suffering and harm.  Again, the plaintiff contends that these are clear

violations of his Eighth Amendment rights and that he has a great likelihood of

prevailing on his claims.

Thus, the plaintiff requests that the court issue an injunction and restraining

order "holding the defendants to account for their unconstitutional, malicious,

intentional acts, deprivations, punishments and deliberate callous indifference to the

plaintiff as a U.S. of A. citizen." (*Id.* at 13).  The plaintiff further contends that his

present suffering and potential suffering if he is not given his proper medication is

"enormous."  He further states that:

> If Plaintiff is continued to be sprayed with extremely strong chemical
> [agents] just for begging for help, it will cause him overwhelming harm,
> pain and suffering.  To be [strapped] in extreme restraints for hours on
> end with no food or water while being peaceful and calm amounts to sick
> and cruel punishment that no human being should have to live through.

(*Id.* at 14).  The plaintiff further contends that the burden or harm to the defendants is

slight, as they are only being asked to do is obey the law, which is in the best public

interest.  (*Id.* at 14-15).

The plaintiff submitted a proposed Order with his second motion for preliminary injunctive relief which requests that the following relief be ordered:

1.   Compel the defendants to ensure that the plaintiff receives Klonopin as previously ordered by doctors outside MOCC;

2.   Enjoin the defendants, and all other WVDOC staff from using chemical agents on the plaintiff when he is locked in his cell and "posing no imminent and present danger to himself, others or state property" and cease following unconstitutional policies and protocols given by Warden David Ballard; and

3.   Enjoin the defendants and all other WVDOC staff from "systematically punishing plaintiff without any 'due process' through the conditions of extreme deprivation of the 'Behavior Modification Program.'"

(ECF No. 91, Attach. # 3).

On July 31, 2014, the defendants named in the plaintiff's Complaint filed a Response to the plaintiff's Motion for Preliminary Injunction and/or Restraining Order (*i.e.*, the plaintiff's second motion for preliminary injunctive relief) (ECF No. 94).   The response asserts as follows:

2.   Plaintiff generally alleges that he has been the victim of excessive force in the past by way of the use of OC spray at times while he was inside his cell in the segregation unit of [MOCC].   However, as this Court has previously found, use of chemical agent to gain control of an inmate, even if secured in a cell, is not necessarily a violation of the inmate[']s civil rights.   *See Memorandum Opinion and Order, Harper v. McCloud, Civil Action No. 2:12-cv-00656, Document 125, Affirmed by United States Court of Appeals for the Fourth Circuit, No. 14-6541 on June 23, 2014.*

3.   During deposition on July 29, 2014, Plaintiff testified that he was receiving various medications for mental health issues.   While klonopin was not among the psychiatric medications Plaintiff testified that he was receiving, these Officers are not responsible, nor qualified and not able to prescribe any medications to the Plaintiff.   Rather, it appears Plaintiff had a disagreement with his medical care provider with regard to what medications he should be prescribed.

4.   Plaintiff relies upon a pleading filed on behalf of Inmate Andre Wilson to the West Virginia Supreme Court of Appeals for his allegations

13

that the "Behavior Modification Program" should be ended.  However, the Plaintiff fails to note that the Petition filed by Inmate Wilson was promptly dismissed by the West Virginia Supreme Court of Appeals.

(ECF No. 94 at 2).

The defendants further assert that the plaintiff's requests for injunctive relief do not meet any of the recognized functions of such an equitable remedy.  Their Response states:

> 7.    First, Plaintiff cannot establish that the injunction would be preventative or protective.  "To justify preliminary relief, plaintiff must demonstrate that injury is certain, great, actual and not theoretical . . . . Allegations of what is likely to occur are of no value since court must decide whether harm will in fact occur."   *Tanner v. Fed. Bureau of Prisons*, 433 F. Supp. 2d 117, 125 (D.D.C. 2006).   Plaintiff has only demonstrated that injury is theoretical.

> 8.    Second, Plaintiff cannot establish that the injunction would be prohibitory.  He once again makes a threadbare accusation that he will suffer irreparable harm should the injunction not be granted.  Mount Olive Corrections Officers and employees are not [sic] already not permitted to use "excessive" or "unnecessary" force.  An injunction here would serve no purpose.  Officers go through academy training on the use of force and yearly training on the use of force, and use force when necessary to prevent injuries to themselves, other inmates and prison staff.  Restrictions on "excessive" or "unnecessary" force are already in place within the WVDOC.  Further, there are already procedures in place through Use of Force Review Committee reviews, Warden initiated investigations, and appeals to the Commissioner of the WVDOC to prevent any use of force which is "excessive" or "unnecessary."

> 9.    Finally, Plaintiff cannot establish that the injunction would be restorative.  A preliminary injunction "may be granted to restore the status quo ante, [but it] ought not to be used to give final relief before trial."  *Howerton v. Grace Hosp., Inc.*, 1991 U.S. Dist. LEXIS 19451, *10 (W.D.N.C. Mar. 14, 1991) (*quoting United States v. Adlers Creamery*, 107 F.2d 987, 990 (2d Cir. 1939)).   A determination that a preliminary injunction is warranted here would in fact be final relief before trial.  This Court would need to determine that excessive force was used, which is not even before this Court in the instant case.  Additionally, even if the Court were to Order that these Defendants provide the Plaintiff with Klonopin, they are not legally qualified or capable of prescribing the specific medication to the Plaintiff.

10.    Therefore, because an injunction would not serve as preventative or protective, would serve no purpose under the prohibitory function, and would not restore the status quo ante, Plaintiff's Motion for Preliminary Injunction and/or Restraining Order should be DENIED.

(ECF No. 94 at 3-4).

The plaintiff's requests for preliminary injunctive relief are speculative at best. As noted by the defendants, the plaintiff's motions largely address conduct that has occurred in the past and only assert theoretical future injury.  A mere possibility of additional harm will not suffice to support the granting of a preliminary injunction. *Winter*, 555 U.S. at 21.  Moreover, the plaintiff has not demonstrated that the relief he is seeking can be provided by or ordered against the named defendants.

Thus, the plaintiff has not clearly shown that he is likely to succeed on the merits of his claims or that he is likely to be irreparably harmed without preliminary injunctive relief.  Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff has not demonstrated the need for preliminary injunctive relief under the circumstances.  Therefore, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** the plaintiff's "Motion for Preliminary Injunction and/or Protective Order" (ECF No. 49) and his "Motion for a Temporary Restraining Order and Preliminary Injunction" (ECF No. 91).

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the plaintiff shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the

15

Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be provided to Judge Johnston.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to the plaintiff and to transmit a copy to counsel of record.


August 7, 2014

Dwane L. Tinsley
United States Magistrate Judge

16