IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

**ELI WAYNE FREELAND,**

    **Plaintiff,**

v.                                  Case No. 2:12-cv-08712

**JEFF HILEWITZ, BRIAN FERNANDEZ,
DANIEL HAHN, and MICHAEL BUNCH,**

    **Defendants.**

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the court is the defendants' Motion for Summary Judgment. (ECF No. 115). This matter is assigned to the Honorable Thomas E. Johnston, United States District Judge, and it is referred to the undersigned for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

## PLAINTIFF'S ALLEGATIONS AND FACTUAL BACKGROUND

The plaintiff's Complaint, which was filed on December 10, 2012, alleges that his rights under the Eighth Amendment were violated because the defendant prison officials were deliberately indifferent to serious security breaches, and failed to protect the plaintiff from a substantial risk of serious harm from another inmate who escaped from his segregation cell and attacked the plaintiff. The plaintiff seeks monetary damages, as well as declaratory and injunctive relief.

Specifically, the plaintiff alleges that, at approximately 3:15 p.m. on September 27, 2012, while housed on the Quilliams II segregation unit at the Mount Olive Correctional Complex ("MOCC"), the plaintiff was escorted out of his cell by Sgt. Jeff

Hilewitz and Cpl. Daniel Hahn in order to make a telephone call. The plaintiff alleges that he was handcuffed, shackled, and then chained to the wall next to the telephone. The officers then left the pod. (ECF No. 1 at 9, ¶ 11).

The plaintiff further alleges that, as soon as the officers left the pod, inmate Joseph Howard began kicking and beating his cell door, and continued to do so for approximately 10-15 minutes. Although the beating caused loud, explosive sounds, no staff responded to investigate. (*Id.* at 9-10, ¶¶ 11-12). The plaintiff alleges that Howard's door then flew open and Howard came out of his cell carrying the iron post from his cell stool, which he had somehow unbolted from the floor. (*Id.* at 10, ¶ 12). The plaintiff alleges that staff had not searched Howard's cell for months. (*Id.* at 10, 14, ¶¶ 12, 34).

The plaintiff further alleges that, although other inmates, who witnessed Howard exit his cell with the post, began to kick their doors and scream to get the attention of staff, no one came into the pod. (*Id.*, ¶¶ 13, 15). The plaintiff was beaten by Howard with the iron post, and alleges that he received injuries including head trauma, hearing loss in his left ear, a separated left shoulder and injuries to his right arm and both hands. (*Id.*, ¶ 14).

The plaintiff further alleges that Correctional Officer Michael Bunch was in the Control Tower and had a clear view of this entire incident, as well as notice that inmate Howard's door was unsecure, but he did nothing. (*Id.* at 10-11, ¶¶ 15, 22). The plaintiff further alleges that Sgt. Jeff Hilewitz, Cpl. Brian Fernandez, Officer Elliott (who is not named as a defendant herein) and Cpl. Daniel Hahn stood outside the pod door and watched the entire incident, doing nothing and saying nothing. (*Id.*, ¶ 16). Ultimately, Howard stopped beating the plaintiff and returned to his cell. (*Id.* at 11, ¶ 17).

The plaintiff alleges that the defendants disregarded and failed to reasonably respond to a known danger.  (*Id.*, ¶ 20).  The plaintiff further alleges that:

> It was entirely reckless for the defendants to handcuff, shackle then chain me to the wall just to use the telephone then just stand there during the assault.  There was no security need to restrain me in such an excessive manner, this is proven by the fact that after I was assaulted, the guards began to allow me out of my cell to walk about the pod.

(*Id.* at 12, ¶ 25).  The plaintiff claims that the defendants' conduct was unreasonable and evinced deliberate indifference.  (*Id.*, ¶¶ 23, 26).

The plaintiff further claims that the defendants had prior specific knowledge that an inmate could beat his door until it came open, because, approximately three months prior, on June 18, 2012, an inmate named Christopher Cox beat his door until it opened and Cox exited his cell and assaulted a janitor who was cleaning the day room shower.  (*Id.* at 12-13, ¶ 28).  The plaintiff also alleges that inmate Cox beat another inmate to death on the recreation yard of the segregation unit.  (*Id.*)  Significantly, however, the plaintiff's Complaint does not allege that, prior to this incident, he had advised staff of any problems between himself and inmate Howard.

The plaintiff claims that there is a clear pattern of reckless disregard for security on the MOCC segregation units, resulting in damage to cell doors and inmate assaults, and that the defendants have done nothing to prevent it from happening again.  (*Id.* at 13, ¶¶ 30, 31).  The plaintiff further alleges that, despite having specific knowledge that prolonged beating on a cell door will result in the door opening, the defendants either have not implemented any procedures requiring a rapid response for investigation of unsecure doors, or failed to follow such policies or procedures on September 27, 2012.  (*Id.*, ¶¶ 32, 33).

With his Complaint, the plaintiff also filed the affidavits of nine other inmates who were in Pod 5 of the Quilliams 2 unit at the time of inmate Howard's assault of the plaintiff. (*Id.*, Exs. 5-13). The Affidavit of Charles Lively indicates that, while Lively was working as a janitor in the pod, he noticed that the seat on the stool in inmate Howard's cell had been removed and was replaced with what appeared to be a folded up blanket. (ECF No. 1 at 14, ¶ 35 and Ex. 5). Lively further indicates that only one bolt still held the stool to the floor, and that the stool had been in that condition for some time. (*Id.*) Lively further states that he told Howard that he would report the condition of the stool to the staff so that maintenance could fix it, but Howard told him that they already knew about it. (*Id.*) The other eight affidavits provide statements from other inmates in the pod who witnessed Howard beating his door, the attack on the plaintiff, and the conduct of the defendants during that time. (*Id.*, Exs. 6-13).

On July 24, 2013, the plaintiff was granted leave to amend his Complaint to add six new paragraphs. The amendments to the Complaint allege that the plaintiff had a verbal confrontation with Cpl. Brian Fernandez approximately 30 minutes prior to Howard's attack on the plaintiff. As a result, the plaintiff was denied his usual one-hour recreation period. However, Fernandez allowed the plaintiff the opportunity to use the telephone, which resulted in the attack. (ECF No. 22 at 3, ¶ 1). The plaintiff's amendments further allege that the plaintiff had previously had numerous conflicts with Sgt. Jeff Hilewitz, including at least two occasions where Hilewitz pepper sprayed the plaintiff, and, in one of those instances, Hilewitz accidentally ingested a large amount of pepper spray. (*Id.*, ¶ 2). The plaintiff contends that his prior confrontations with these officers "provided motivation for their disregarding Plaintiff's need for emergency assistance while being attacked by inmate Howard." (*Id.*, ¶ 5).

4

The plaintiff's amendments to his Complaint also discuss, in more detail, the prior incident in which inmate Christopher Cox kicked his door open and attacked another inmate with a "homemade weapon broom/shank." The plaintiff alleges that, in that incident, correctional officers immediately entered the pod and subdued Cox. (*Id.*, ¶ 3). The plaintiff further alleges that there were other prior incidents in which staff immediately investigated the source of the banging from inmates beating and kicking their doors and remedied those situations. (*Id.*, ¶ 4). Thus, the plaintiff asserts that the defendants should have similarly responded to assist the plaintiff on September 27, 2012.

## STANDARD OF REVIEW

In evaluating summary judgment motions, Rule 56(a) of the Federal Rules of Civil Procedure provides:

> A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a) (2010). Material facts are those necessary to establish the elements of a party's cause of action. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. *Id.* The moving party has the burden of establishing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate

5

where the ultimate factual conclusions to be drawn are in dispute. *Overstreet v. Kentucky Cent. Life Ins. Co.*, 950 F.2d 931, 937 (4th Cir. 1991).

Rule 56(c)(1) of the Federal Rules of Civil Procedure provides that:

A party asserting that a fact cannot be or is genuinely disputed, must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Subsection (e) of Rule 56 provides that, if a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, the court may: (1) give the parties an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and undisputed supporting materials show that the movant is entitled to it; or (4) issue any other appropriate order. Fed. R. Civ. P. 56(e).

A court must not resolve disputed facts, weigh the evidence, or make determinations of credibility. *See Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986); *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1239 (4th Cir. 1995). Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor. *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979). Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). However, the

party opposing the motion may not rely upon mere allegations or denials of the pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Sprenkle v. Hartford Life Ins. Co.*, 84 F. Supp. 2d 751 (N.D. W. Va. 2000).

## ANALYSIS

### A. The plaintiff's Eighth Amendment claims.

The defendants' Motion for Summary Judgment (ECF No. 115) and Memorandum of Law in support thereof (ECF No. 116) argue that the plaintiff cannot successfully assert that the defendants were deliberately indifferent to a substantial risk of harm to him.

In *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), the Supreme Court held that the Eighth Amendment to the Constitution "imposes duties on [prison] officials who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" The duty to guarantee an inmate's safety includes "a duty to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 828.

To sustain an Eighth Amendment claim, a prisoner must show two things: (1) "the deprivation must be, objectively, 'sufficiently serious;'" that is, "denial of 'the minimal civilized measure of life's necessities;'" and (2) the prison official had a "'sufficiently culpable state of mind;'" that is, "'deliberate indifference' to inmate health or safety." *Id.* at 834. (Citations omitted.) The Supreme Court rejected an argument that an objective test of deliberate indifference be established.

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk

7

to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

While deliberate indifference on the part of prison officials to a specific known risk of harm states a claim under the Eighth Amendment to the United States Constitution, *see Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987), prison officials cannot be held liable under the Eighth Amendment unless they knew of and disregarded an excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 847. The negligent failure to protect inmates from violence will not suffice. *Pressly*, 816 F.2d at 979.

The defendants' Memorandum of Law asserts that the plaintiff has not demonstrated that any of the named defendants acted with deliberate indifference to his safety. Their Memorandum asserts:

> There is no evidence to indicate the officers heard inmate Howard banging on his cell door prior to Mr. Freeland using the phone or knew that Inmate Howard would breach the door and escape his cell.
>
> While Mr. Freeland was on the phone, Cpl. Daniel Hahn heard a loud bang. However, due to the echoes in the Quilliams Unit, Cpl. Hahn could not determine where the bang originated. Additionally, the lights in the tower that inform the tower operator when an inmate is banging on his door only flash momentarily while the inmate beats on the door. The lights only illuminate when the door is insecure. Therefore, when an inmate strikes the door there is a brief flash on the panel as the force temporarily forces the door ajar, but not open. Thus, unless the officer is looking at the light when the kick occurs, the tower operator cannot determine which door is being kicked. A door must be kicked multiple times successively before the officers are able to determine which door is being kicked. As Cpl. Daniel Hahn testified, he only heard one bang, and then a few minutes later a second bang. The officers were not able to locate the source of the bangs prior to inmate Howard breaking out of his cell.

(ECF No. 116 at 5-6).

The defendants' Memorandum of Law further asserts that the undisputed evidence of record demonstrates that the defendants entered the pod to assist the plaintiff as soon as they determined that it was safe for them to do so, after defendant Hilewitz obtained a gas gun to provide them cover. (*Id.* at 6). Their Memorandum further states:

> Additionally, after inmate Howard popped the door open and exited his cell, the correctional officers immediately responded to the pod door, even though they did not enter. By DOC policy, the correctional officers are not allowed to enter the pod without cover while there is an unrestrained inmate in the pod. If a correctional officer enters the pod without cover, they risk sustaining injury preventing them from controlling the situation and keeping order. More simply put, the officers cannot rescue Inmate Freeland if the officers are incapacitated. Thus, Sgt. Hilewitz ran to get cover through the use of the gas gun. The correctional officers had no other cover available to them upon arriving at the pod door. The Plaintiff claims the officers could have discharged the MK-9/pepper spray or stun grenades through a bean hole in the pod door. However, the telephone area where the Plaintiff was attacked is out of range for the MK-9/pepper spray. Additionally, the stun grenades referenced by the Plaintiff are locked up with the gas gun and thus were not immediately available to the correctional officers. As soon as Sgt. Hilewitz returned with the gun, the officers immediately entered the pod pursuant to DOC policy. Sgt. Hilewitz provided cover on inmate Howard while the other correctional officers restrained and removed inmate Freeland from the pod.

(*Id.*) Thus, the defendants assert that they entered the pod as quickly as possible, after realizing that there was imminent danger to the plaintiff. (*Id.*)

On November 18, 2014, the plaintiff filed a "Motion Seeking Denial of Defendants' Motion for Summary Judgment" (ECF No. 125) (hereinafter "the plaintiff's Response"). In his Response, the plaintiff first alleges that the defendants knew that the locking mechanisms on all of the cell doors in the Quilliams Units were unsafe and defective. (*Id.* at 1-2). To support this assertion, the plaintiff relies upon a prior incident in which inmate Christopher Cox kicked his cell door open and attacked inmate

9

Talbert Dehaven on April 10, 2012. The plaintiff asserts that defendant Michael Bunch witnessed that attack as well. (*Id.*) The plaintiff's Response further contends:

> The day after Cox's cell door #507 of Pod 5 was kicked open and Dehaven attacked, MOCC officials dispatched Cpl. Curtis Sigmon, Key Control Officer to investigate. He was to determine the cause of the failure of the cell door. In his April 11, 2012, report, regarding the cell door #507 Cpl. Sigmon wrote in pertinent part:
>
>> "It has been my experience that when this situation occurs that it was the result of repeated blows to the door from the inside. It is also my opinion that <u>if an Inmate is allowed to kick the door, eventually these screws will shear into</u> [sic; in two]." (Plaintiff's Exhibit Sixteen) (Emphasis supplied)
>
> Dehaven's statement to Trooper Elswick combined with the Sigmon report establishes the fact that DOC, MOCC staff, as well as the individual Defendants knew the cell doors could not hold prisoners as designed. The Defendants had from April 10, 2012 and September 27, 2012 to reinforce the doors and eliminate exposing staff and prisoners to assaults like the one the Plaintiff suffered. They did not make the pod safe. The acts, with malice, of the Defendants of placing the Plaintiff in an unsafe and dangerous situation led to the [sic] his severe and permanent injuries.

(ECF No. 125 at 2 and Ex. 16).

The plaintiff's Response further asserts that the defendants knew of hostility between the plaintiff and Joseph Howard and knew that Howard had access to a weapon. (*Id.* at 2-3). The plaintiff offers the declaration of inmate Cody Fetty, who claims that the plaintiff and Howard often engaged in "screaming matches" and that their dislike of one another was "pretty much common knowledge among inmates and correctional officers alike." (*Id.*, Ex. 14). Fetty's declaration further states that he overheard defendant Hilewitz tell the plaintiff and Howard, "Why don't you two door warriors shut the fuck up. Or be men and go to the Rec and find out who the real bad ass is? We can make that happen." (*Id.* at 3 and Ex. 14). The plaintiff further asserts

that the defendants had prior notice that inmate Howard had removed the top of his stool and that three of the four bolts had been removed from it. (*Id.* at 3).

However, in the plaintiff's interview by staff after his assault, he specifically denied that he and inmate Howard had any problems before this happened. (*Id.*, Ex. 18 at 2).

The plaintiff further asserts that the evidence of record demonstrates that inmate Howard was kicking his door for 10-15 minutes and with such force so as to kick it open. (*Id.* at 3-6). The plaintiff again offers a number of affidavits or declarations from other inmates, and an affidavit from his mother, with whom he was speaking on the phone at the time of this incident, all of whom support this contention. (*Id.*, Exs. 6-13 and 17). The plaintiff further asserts that defendants stood by and took no preventive action, and then immediately initiated a cover-up of their actions. (*Id.* at 6-8).

On January 12, 2015, the defendants filed a Reply brief. (ECF No. 135). The Reply states:

> Discovery responses of each of the Defendant Officers clearly demonstrate that they immediately responded to the assault and made entry into the Pod as soon as possible. More specifically, upon being notified of the situation, the Officers responded to the Pod door. Officer Hilewitz obtained a 37 mm gas gun (a less lethal weapon capable of firing 37 mm projectiles including [a] ball loaded with OC and/or wood blocks). Upon arrival of Officer Hilewitz and the gas gun, Inmate Howard was retreating. The only less-lethal monition available to the Officers prior to the arrival of the gas gun was personally carried OC canisters that did not have sufficient range to reach Inmate Howard. *See Supplemental Discovery Responses of the Defendant Officers attached hereto as Exhibit A and particularly responses to Interrogatory No. 11.*

(*Id.* at 2 and Ex. A at 3). The defendants further assert that the plaintiff's Response attempts to present issues related to matters beyond the scope of whether the defendants appropriately responded to and rescued the plaintiff from Howard. (*Id.*)

On February 6, 2015, the plaintiff filed an unauthorized Sur-Reply (ECF No. 136). The plaintiff continues to dispute the defendants' assertion that the Mark 9 chemical agents which the correctional officers possessed could not have been used to safely enter the pod's common area to assist the plaintiff. He states that:

> [T]here were four Mt. Olive Correctional Officers armed with very large canisters of Mark 9 chemical agents. They could have without any risk entered Pod #5 to prevent the ongoing assault and attempted murder of the Plaintiff. The tower officer could have alerted them should any other door (of sixteen) came [sic; have come] open. The only cell door opened belonged to the assailant. Four well-trained COs could have easily subdued the lone attacker.

(*Id.* at 2). The plaintiff also provided additional exhibits, attempting to demonstrate that correctional officers routinely respond to banging sounds and have easily been able to pinpoint which inmates were kicking their doors from the sounds alone. (*Id.* and Ex. 1). The plaintiff's Sur-Reply further emphasizes his belief that the defendants' actions were motivated by the previous argument between the plaintiff and defendant Fernandez. (*Id.* at 2-3). Yet, beyond the temporal proximity to the incident, the plaintiff offers no actual evidence that the defendants acted with malice or deliberate indifference as a result of the plaintiff's prior dispute with Fernandez or any of the other defendants.

To establish a claim for failure to protect him from violence, an inmate must show: (1) "serious or significant physical or emotional injury;" and (2) that the prison officials had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). In *Odom v. South Carolina Dep't of Corrections*, the United States Court of Appeals for the Fourth Circuit observed that:

> In June 2000, it was clearly established in this circuit that correctional officers who are present when a violent altercation involving an armed inmate erupts and fail to intervene immediately do not violate the Eighth

12

> Amendment if officers are unarmed, unaware of a risk of harm prior to the altercation, and take reasonable steps to intervene safely. *See* [*Winfield v. Bass*, 106 F.3d 525, 531-32 (4th Cir. 1997)]. By the same token, we had also determined well before the time of this attack, that a correctional officer who stands by as a passive observer and *takes no action whatsoever* to intervene during an assault violates the rights of the victim inmate. *See Gordon v. Leake*, 574 F.2d 1147, 1152 (4th Cir. 1978). *Gordon* does not suggest whether the officers knew about the potential violence before the attack or whether they were merely present when the fight broke out; nevertheless, the plaintiff stated a viable claim as a result of the officer's failure to take any action whatsoever.

349 F.3d 765, 773 (4th Cir. 2003).

The undisputed evidence of record demonstrates that the defendants entered the pod as soon as they believed it was safe to do so, after Sgt. Hilewitz obtained the gas gun for cover. The plaintiff has not sufficiently demonstrated that the defendants acted with malice or deliberate indifference toward the plaintiff's safety. At most, the plaintiff might be able to demonstrate that the defendants' failure to immediately enter the pod or use other tools, such as the Mark 9 OC spray, was negligent, which is insufficient to establish an Eighth Amendment violation. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the defendants are entitled to judgment as a matter of law on the plaintiff's Eighth Amendment claims.

## RECOMMENDATION

It is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the defendants' Motion for Summary Judgment (ECF No. 115) and dismiss this action from the docket of the court.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the

parties shall have fourteen days (filing of objections) and then three days (service/mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the district court and a waiver of appellate review by the circuit court of appeals.  Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on Judge Johnston.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy to the plaintiff and to transmit a copy to counsel of record.

 July 27, 2015

Dwane L. Tinsley
United States Magistrate Judge